```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
BFI GROUP DIVINO CORPORATION,           :      06 Civ. 2093 (WCC)

                     Plaintiff,         :      ECF CASE

        - against -                     :

JSC RUSSIAN ALUMINUM  d/b/a RUSAL, a    :
foreign corporation; JSC BRATSK                OPINION
ALUMINUM PLANT, a foreign corporation;  :      AND ORDER
RUSAL AMERICA CORP., a Delaware
corporation; DAYSON HOLDING LTD., a     :
foreign corporation; and DOES 1-20,
inclusive,                              :

                     Defendants.        :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

        BURNHAM BROWN
        **Attorneys for Plaintiff**
        1901 Harrison Street, 11th Floor
        Oakland, California 94612

JIMMIE L. WILLIAMS, ESQ.
ROBERT M. BODZIN, ESQ.
GREGORY D. BROWN, ESQ.
JOHN J. VERBER, ESQ.

    Of Counsel

        GIBSON, DUNN & CRUTCHER LLP
        **Attorneys for Defendants**
        200 Park Avenue, 47th Floor
        New York, New York  10166-0193

RANDY M. MASTRO, ESQ.
MARSHALL R. KING, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

This is a motion for relief from the Judgment this Court entered on May 30, 2007, granting defendants' motion to dismiss on the ground of *forum non conveniens*. *See BFI Group Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274 (S.D.N.Y. 2007) (Conner, J.) ("*BFI I*"). Plaintiff moves for relief from the Judgment pursuant to FED. R. CIV. P. 60(b), on the ground that newly discovered evidence shows that Nigeria, which we found to be an adequate alternative forum, is in fact unsafe and inadequate. For the following reasons, plaintiff's motion is denied.

## BACKGROUND

The facts of this case are set out at length in *BFI I*, familiarity with which is presumed. The following is a summary of the facts relevant to the present motion, as well as such background facts as are helpful in providing context.

In *BFI I*, plaintiff BFI Group Divino Corp. ("BFI") brought claims of tortious interference with contract, tortious interference with prospective business advantage, unfair competition, and conspiracy to commit fraud against defendants JSC Russian Aluminum d/b/a RUSAL ("RUSAL"), JSC Bratsk Aluminum Plant ("Bratsk"), RUSAL America Corp. ("RUSAL America"), Dayson Holding Ltd. ("Dayson"), and "Does 1-20," several unnamed agents of the corporate defendants (collectively, "defendants"). The dispute arose out of plaintiff's bid to purchase a majority interest in the Aluminum Smelter Company of Nigeria ("ALSCON"), a Nigerian government-owned company that was being privatized. *BFI I*, 481 F. Supp. 2d at 277. Defendants RUSAL and Bratsk also submitted bids. *Id.*

Plaintiff alleged several irregularities relating to the bidding process. Plaintiff claimed that,

1

while the bidding was still open, the General Manager of ALSCON told plaintiff that the Nigerian government had already promised ALSCON to RUSAL. *Id.* Plaintiff also claimed that although it submitted the highest bid ($410 million, compared with RUSAL's bid of $205 million), it was improperly disqualified from the bidding process, after being told it had won. *Id.* at 278. RUSAL ultimately purchased ALSCON, and plaintiff brought suit in this Court and in Nigeria.[1] *Id.* at 279.

In *BFI I*, we granted defendants' motion to dismiss on the grounds of *forum non conveniens*. *Id.* at 289. We found Nigeria to be an adequate alternative forum because defendants were subject to service of process and had agreed to appear there, and because Nigerian law provided causes of action analogous to those plaintiff sought to bring in this Court. *See id.* at 280-83. Plaintiff argued that Nigeria was nevertheless inappropriate because Nigerian courts would not fairly and adequately adjudicate the case, and plaintiff's employees would be at risk of physical harm if the case were tried there. *Id.* at 283.

We rejected the first argument because it was based on little more than a disagreement with an earlier ruling of the Nigerian trial court. *Id.* (noting the Second Circuit's reluctance to find foreign courts corrupt or biased "absent some particularized showing of wrongdoing"). We rejected the safety argument as well. *Id.* at 284. Although we acknowledged the appropriateness of considering the litigants' safety, we found that plaintiff had offered "only generalized statements regarding instability in the region." *Id.* Given that, as well as the facts that plaintiff was then litigating a closely related case in a Nigerian court and seeking to operate a business there, we found

---

[1] The defendant in the Nigerian case is that country's Bureau of Public Enterprises ("BPE"), which administered the bidding process; plaintiff seeks specific performance of the alleged agreement between BPE and plaintiff, which would transfer a majority stake in ALSCON to plaintiff. (*See* King Decl., Ex. C.) The case is currently before the Supreme Court of Nigeria. (*See id.,* Ex. B at 5.)

the argument unpersuasive. *Id.*

## DISCUSSION

I. **Plaintiff's "Newly Discovered Evidence"**

Plaintiff now moves for relief from our Judgment[2] under FED. R. CIV. P. 60(b)(2) ("newly discovered evidence") or, alternatively, Rule 60(b)(6) ("any other reason that justifies relief"). (*See* Pl. Mem. Supp. Mot. For Relief From J. at 5.) The motion is based on "the grounds that due to the increasing level of violence in Nigeria, and the actual violent events that have recently taken place in said country, key witnesses are unwilling to appear in Nigeria," and that trying the case there would place those involved in physical danger. (*Id.* at 2.)

The one "key witness" plaintiff has identified as being unwilling to appear in Nigeria is Nikolay Nikolaishvili. (*Id.* at 3-4.) Mr. Nikolaishvili was the Project Manager for RUSAL in its acquisition of ALSCON. (Williams Decl., Ex. B.) He sent the Court a letter, dated June 8, 2007, expressing his unwillingness to appear in Nigeria and purporting to revoke RUSAL's consent to jurisdiction there.[3] (*Id.*) The letter stated that on June 3, 2007, six RUSAL employees were kidnaped from an ALSCON site in Ikot Abasi, Akwa Ibom State, Nigeria, by "an unknown militant

---

[2] Plaintiff has also appealed the Judgment to the Second Circuit. (*See* King Decl., Ex. A.) Although a Notice of Appeal generally divests a district court of jurisdiction, a court retains jurisdiction to deny a Rule 60(b) motion during the pendency of the appeal. *See, e.g.*, *Selletti v. Carey*, 173 F.3d 104, 109 (2d Cir. 1999).

[3] By letter dated June 14, 2007, defendants informed the Court that Mr. Nikolaishvili had been terminated by RUSAL on May 31, 2007, that he was no longer authorized to speak for RUSAL, and that the company still consented to jurisdiction in Nigeria. (*Id.*, Ex. C.) In a letter dated June 29, 2007, Mr. Nikolaishvili explained that his previous letter had been meant to express only his own unwillingness to travel to Nigeria, and that he did not claim authority to revoke RUSAL's consent to jurisdiction there. (*Id.*, Ex. D.)

3

group." (*Id.*) Plaintiff also claims that the general level of violence in Nigeria has been increasing, and that "it has been widely reported in the news media that there have been over 200 kidnapings since militants increased their attacks in 2005 . . . with 100 foreign workers being taken in 2007 alone." (Pl. Mem. Supp. Mot. For Relief From J. at 5.)

II.     F<span style="font-variant:small-caps">ed</span>. R. C<span style="font-variant:small-caps">iv</span>. P. 60(b)

F<span style="font-variant:small-caps">ed</span>. R. C<span style="font-variant:small-caps">iv</span>. P. 60(b)(2) provides that a party may obtain relief from a judgment on the ground of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 60(b)(6), a catchall provision, makes relief available for "any other reason that justifies relief." Although plaintiff now moves under both 60(b)(2) and 60(b)(6), the law of this Circuit is clear that a party can not invoke Rule 60(b)(6) when the grounds for relief can be considered under one of the other clauses of the Rule. *See United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391-92 (2d Cir. 2001); *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986); *Tufts v. Corporation of Lloyd's*, 981 F. Supp. 808, 814 (S.D.N.Y. 1996). Since the facts plaintiff presents in support of its 60(b)(6) argument are the same ones it characterizes as "newly discovered evidence," we will consider the motion only under Rule 60(b)(2).[4] *See Tufts*, 981 F. Supp. at 814 ("The relief Plaintiffs seeks in this action is clearly

---

[4] Applying Rule 60(b)(6) instead of or in addition to Rule 60(b)(2) would not change the outcome here. Relief under the former provision is available only "if the movant can demonstrate extraordinary circumstances or extreme and undue hardship." *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (internal quotation marks and citations omitted). For all of the reasons discussed below, plaintiff's new evidence does not constitute the sort of "highly convincing material" necessary to succeed on a 60(b)(6) motion. *See In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 119 (S.D.N.Y. 2007) (quoting *D'Angelo v. State Farm Fire & Cas. Co.*, 32 Fed. App'x 604, 605 (2d Cir. 2002)).

4

premised on the alleged newly discovered evidence and, as such, falls squarely within Rule 60(b)(2). Plaintiffs therefore cannot also avail themselves of Rule 60(b)(6).").

The purpose of Rule 60(b) is to "strike[] a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer*, 793 F.2d at 61. Because the Rule provides "extraordinary judicial relief," it should be "invoked only upon a showing of exceptional circumstances." *Id.*; *see also Int'l Bhd. of Teamsters*, 247 F.3d at 391 ("A motion for relief from judgment is generally not favored . . . ."). The Rule should not be used to "relitigate matters settled by the original judgment." *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984).

In considering a motion for relief from a judgment based on newly discovered evidence, courts in this Circuit apply a four-part test, which the Second Circuit has described as "an onerous standard":

> [T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Int'l Bhd. of Teamsters*, 247 F.3d at 392 (alteration in original).

All of plaintiff's new evidence fails several of these four factors. First there is the requirement that the evidence be "of facts that existed at the time of trial or other dispositive proceeding." *Id.* Much of the evidence plaintiff now offers was not in existence at the time we decided defendants' motion to dismiss. The kidnaping of six RUSAL employees, for example, took place on June 3, 2007 – four days after the Court entered Judgment. (Williams Decl., Ex. B.) And the fact of Mr. Nikolaishvili's refusal to return to Nigeria first became known sometime around June

8, 2007, the date of his first letter to the Court.[5] Because these events took place after we decided *BFI I*, they do not constitute facts in existence at the time Judgment was entered. *See Gonzalez v. Gannett Satellite Info. Network, Inc.*, 903 F. Supp. 329, 332 (N.D.N.Y. 1995) (holding that actions taken by a party after the court granted summary judgment could not serve as the basis for relief under Rule 60(b)(2)).

Plaintiff also states that there have been "over 200 kidnapings since militants increased their attacks in 2005." First, we note that this number is unattributed; plaintiff merely assures us that "it has been widely reported in the news media." (Pl. Mem. Supp. Mot. For Relief From J. at 5.) As to any events that took place between 2005 and the entry of Judgment on May 30, 2007, plaintiff has not offered any reason why we should consider them newly discovered. And since plaintiff's source of information is the widespread reporting of these events in the media, we have no reason to consider plaintiff "justifiably ignorant of them despite due diligence." *See Int'l Bhd. of Teamsters*, 247 F.3d at 392. As to any events taking place after the entry of Judgment, they are not facts existent at that time.

The third factor also weighs in favor of denying plaintiff's motion: the newly offered evidence would not have changed the outcome of *BFI I*. Plaintiff maintains that Mr. Nikolaishvili is a "key witness" whose testimony will be "material" to plaintiff's case in chief. (Pl. Mem. Supp. Mot. For Relief From J. at 4.) In *BFI I*, we considered the availability of witnesses and other evidence in our analysis of the private interest factors affecting the *forum non conveniens*

---

[5] We can not say when exactly Mr. Nikolaishvili made his decision. But plaintiff has not argued that it happened before Judgment was entered, and Mr. Nikolaishvili appears to have based the decision on the kidnaping of his colleagues (*see* Williams Decl., Ex. B), so we assume that he made the decision sometime after June 3, 2007.

determination:

> [T]he bulk of the relevant non-testimonial evidence, consisting largely of bid documents and, presumably, internal memoranda generated by the BPE, is located either within plaintiff's control or in the offices of various agencies of the government of the Federal Republic of Nigeria. More significantly, as defendants rightly observe, plaintiff's Complaint lists several non-party witnesses employed by the Nigerian government and living within Nigeria. (Defs. Mem. Supp. Mot. Dismiss at 14.) These witnesses consist of the top echelon governmental officers . . . . Plainly, this Court lacks any authority to compel the attendance of these witnesses. . . . Moreover, in the present matter, substantial portions of plaintiff's case in chief would have to be presented in the form of letters rogatory were it tried in the Southern District of New York, for not only are numerous key witnesses located in Nigeria, but RUSAL's agents-that is, those who effectuated the alleged torts-apparently are located within the Russian Federation.

*BFI I*, 481 F. Supp. 2d at 287-88. The unavailability of one witness – who, for all his importance, was not named in the Complaint or plaintiff's motion papers in *BFI I* – does not by any stretch of the imagination outweigh these considerations. Nor does it come close to outweighing the public-interest factors favoring Nigeria as the forum, such as: the interest in having the dispute resolved locally (where the alleged tort occurred and the ALSCON facility and many important witnesses are located); the fact that this Court would have to apply Nigerian law if the case were tried here; and the fact that "[t]he action essentially amounts to a dispute between California and Russian companies over their interactions with the Nigerian government concerning the purchase of Nigerian government property." *Id.* at 284-87.

Two additional factors make plaintiff's new evidence even less compelling. The first is that the kidnapings of the RUSAL employees took place in Ikot Abasi, in Akwa Ibom State. Ikot Abasi is in the Niger Delta region, approximately 500 miles from the capital city of Abuja, where a trial of this case would take place. (*See* King Decl., Ex. D.) Plaintiff has not argued that Abuja itself is unsafe, or that litigating in Nigeria would require any of its agents or witnesses to travel to the more

7

dangerous Niger Delta region.[6]  Second, plaintiff's safety concerns have not dissuaded it from litigating its case against BPE in Nigeria or seeking specific performance of its agreement to purchase ALSCON, which is located in the Niger Delta region.  (*See* King Decl., Exs. B, C.)

Applying the fourth factor, we find that the rest of plaintiff's new evidence is essentially cumulative.  In opposing defendants' motion to dismiss in *BFI I*, plaintiff argued that "Nigeria does not provide a safe venue for the foreign parties involved in this action." (Pl. Mem. Opp. Mot. Dismiss at 21.)  Plaintiff pointed to a U.S. State Department travel advisory warning of a "'deteriorating security situation in the Niger Delta Region'" and armed robberies on Nigerian roads. (*Id.*)  In rejecting that argument we observed that plaintiff had offered "only generalized statements regarding instability in the region," and that the argument was particularly unpersuasive given "plaintiff's extensive litigation of its contractual dispute in Nigerian court, as well as its significant efforts to engage in the operation of a multimillion dollar facility within Nigeria."  *BFI I*, 481 F. Supp. 2d at 284.

In support of its current motion, plaintiff again argues that Nigeria is unsafe, as shown by "continued reports of violence in the area" (such as kidnapings) and "specific violent events surrounding these litigants" – the latter presumably a reference to the kidnaping of six RUSAL employees from an ALSCON site.  (*See* Pl. Mem. Supp. Mot. For Relief From J. at 5.)  As we noted in *BFI I*, it is, of course, appropriate for a court to consider the safety of the litigants in an alternative forum.  *See BFI I*, 481 F. Supp. 2d at 284 (citing *HSBC USA, Inc. v. Prosegur Paraguay, S.A.*, 2004

---

[6] It is unclear from the record before us whether plaintiff's evidence of "increased" violence in Nigeria is confined mostly to the Niger Delta region.  That area seems to be the most unstable part of the country; a former president of Nigeria has called violence in the Niger Delta region "[t]he biggest problem Nigeria faces today."  *See* Sean Murray, *Tackling Nigeria's Violent Oil Swamps*, BBC News, May 30, 2007, http://news.bbc.co.uk/2/hi/africa/6698433.stm.

WL 2210283 (S.D.N.Y. Sept. 30, 2004)); *see also Mujica v. Occidental Petroleum Corp*, 381 F. Supp. 2d 1134, 1143 (C.D. Cal. 2005); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 336 (S.D.N.Y. 2003).

Plaintiff cites *HSBC* in support of its argument that Nigeria is unacceptably dangerous. (*See* Pl. Reply Mem. Supp. Mot. For Relief From J. at 2.) In that case, the court held that Paraguay was not an appropriate alternative forum because of the risk of physical harm the plaintiff's agents and witnesses faced there, as well as doubts about the plaintiff's ability to receive basic justice in that nation's courts. *See HSBC*, 2004 WL 2210283, at *3. Events in Paraguay related to the litigation raised serious safety concerns:

> [A]n HSBC investigator[] was repeatedly followed and found listening devices that had been hidden in his hotel room. He was later chased by a vehicle whose occupants had their weapons drawn and aimed at [him]. During the course of his investigation, [he] learned that five people connected with the robbery or the investigation have been murdered or have died under suspicious circumstances, including the lead prosecutor in the robbery investigation and the police chief in charge of the investigation. Additionally, union leaders of Paraguay's National Civil Aviation Office reportedly complained that their workers investigating the robbery were targets of an intimidation scheme run by an Air Force Major.

*Id.* (internal citations omitted).

Plaintiff's reliance on *HSBC* is misplaced. Contrary to its assertions, and unlike the plaintiff in *HSBC*, plaintiff has not offered evidence of violence "directed towards this litigation" or "individuals connected with this case." (Pl. Reply Mem. Supp. Mot. For Relief From J. at 3.) We assume the individuals plaintiff refers to are the six kidnaped RUSAL employees. Those victims were employees of a defendant, working at a facility plaintiff has sought to purchase. Beyond that, all we have is plaintiff's assertion that they are "connected with this case," with no explanation as to how or why. (*Id.*) Plaintiff does not claim, for example, that the victims were expected to testify

9

or give evidence, that they were involved in the transaction at issue, or that the kidnappers targeted them because of this litigation or events giving rise to it. This is all quite different from *HSBC*, where individuals tasked with investigating the underlying events of the case were apparently targeted for violence as a result. *See HSBC*, 2004 WL 2210283, at *3. As tragic and unsettling as these kidnapings are, there is no indication that they were connected to this case by anything other than coincidence. And since plaintiff has offered no evidence of a more meaningful connection, we view the kidnapings simply as additional, cumulative evidence regarding the general security situation in Nigeria.

Plaintiff's other new evidence about the security situation in Nigeria is also cumulative. Plaintiff has failed to demonstrate that the situation in that country is materially different now from that which existed when we decided *BFI I*. Absent such a showing, claims of "continued reports of violence in the area" and "actual violent events" are simply more of the same argument we found unpersuasive last time. (*See* Pl. Mem. Supp. Mot. For Relief From J. at 2, 5.) An unsupported assertion that the level of violence is increasing (*see id.* at 2) is not enough to change the result.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for relief from the judgment is denied.

SO ORDERED.
Dated: White Plains, New York
    December 12, 2007

_William C. Conner_
Sr. United States District Judge